**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1684
_____

M.A.; E.M.,
Appellants

v.

JERSEY CITY BOARD OF EDUCATION;
SOMERSET HILLS LEARNING INSTITUTE
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 2-13-cv-06946)
District Judge: Honorable William J. Martini
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 21, 2014
_____

Before: CHAGARES, HARDIMAN, and SHWARTZ, Circuit Judges.

(Filed: November 24, 2014)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge

      M.A. is a student with autism who receives special education and related services.

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

His parents appeal the District Court's order affirming the state administrative agency's ("ALJ's") determination that the Jersey City Board of Education's ("District's") proposed placement for M.A. in a public school provided a free, appropriate public education ("FAPE"), dismissing M.A.'s parents' retaliation claim, and denying their motion to amend. For the reasons that follow, we will affirm.

I

In September 2009, the District placed M.A. at Somerset Hills Learning Institute ("SHLI"), a private school that offers an intensive program based on applied behavior analysis ("ABA")[1] for children with autism. **App. 120, 169, 1430, 1431-37, 1441-42, 1458.** On June 5, 2012, after providing notice to M.A.'s parents**, App. 1285,** and rescheduling to accommodate their schedule, **App. 1942,** the District convened a meeting to discuss M.A.'s individual education plan ("IEP"). **App. 170, 175, 1584.** M.A.'s father as well as District and SHLI officials attended the meeting. **App. 170, 175, 1584, 2353**. At the meeting, Dr. Kevin Brothers, Director of SHLI, reported that M.A.'s stereotypy[2] had been substantially reduced and that he had made good progress in other areas,

---

[1] "ABA" is not a specific teaching methodology but rather uses tactics derived from principles of behavior. E.C. v. Bd. of Educ. of the City Sch. Dist. of Rochelle, No. 11-cv-9429, 2013 WL1091321, at *3 (S.D.N.Y. Mar. 15, 2013). The verbal behavior ("VB") method of teaching autistic children is "a branch of [ABA]." L.G. v. Wissahickon Sch. Dist., Nos. 06-333, 06-3816, 2011 WL 13572, at *1 n.2 (E.D. Pa. Jan. 4, 2011). In the school setting, ABA uses "rewards to reinforce positive life skills" and the VB method also "emphasizes a child's requesting what is desired as a means to develop verbal skills." Id.

[2] Stereotypy consists of "repetitive movements" displayed by some children with autism. App. 571.

including language and reading comprehension.  **App. 6, 120, 170, 2363-64, 2367, 2371-72, 2387, 2402.**  He concluded that M.A. no longer required the intensive services he was receiving at SHLI and would benefit from a less restrictive setting where he could learn with peers.  **App. 6, 120-21, 170, 2402, 2409-10.**  Based on Brothers' opinion, the District recommended changing M.A.'s placement to an in-district, special education classroom for autistic children.  **App. 2413, 2425-26**.  This recommendation was incorporated into M.A.'s IEP ("2012 IEP").  **App. 1592-93, 2425-26**.

M.A.'s parents opposed the transfer and filed a due process petition alleging that the 2012 IEP was procedurally and substantively deficient under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("RA"), and New Jersey's special education laws.  **App. 121, 170, 178-82.**  The petition claimed that the District failed to provide M.A.'s parents with adequate notice and opportunity to participate in M.A.'s placement decision and that M.A. was not ready to transition to a less restrictive environment.[3]  **App. 180-81.**

Meanwhile, on September 19, 2012, the District invited M.A.'s parents to observe the special education classroom that had been selected as a potential placement.  **App. 171.**  Then, by letter dated September 20, 2012, the District assigned M.A. to a specific

_____

[3] The petition also asserted a procedural violation arising from an alleged failure to reevaluate M.A. before changing his placement.  This claim is not raised on appeal.  **App. 179-80.**

classroom effective October 9, 2012.[4] **App. 121, 1614.** On October 22, 2012, another IEP meeting was held and a transition plan was added to the 2012 IEP. **App. 121, 1618-36.** On October 25, 2012, M.A.'s father observed M.A.'s assigned classroom. **App. 121, 171, 1811.**

M.A.'s parents filed a motion for summary decision on their procedural claim that they were not provided notice of the placement. **App. 166, 1189-90.** The ALJ ruled that any notice defect lacked "substantive impact" because the IEP informed M.A.'s parents that "M.A. would be placed in a special education classroom for autistic children," "specific classrooms were later identified with opportunities for the parents to observe," and, as a result, "there was no significant obstacle to [M.A.'s parents'] participation." App. 175-76.

The ALJ then conducted a due process hearing on the substantive claims, at which various witnesses testified. **App. 183, 352, 482, 540, 792, 1007, 1079.** Brothers testified for the District as an expert, opining that based on ABA data and his observations regarding M.A.'s progress, SHLI was no longer an appropriate placement for M.A. **App. 136, 550, 557.** He explained that M.A. needed a full-day classroom that offers both small group instruction and systematic integration with typical peers that SHLI could not

---

[4] M.A.'s parents filed an emergent application under the IDEA's "stay put" provision, pursuant to which M.A. remains at SHLI pending resolution of this appeal. **App. 6, 171.**

provide.[5] **App. 136.** He testified that although M.A. needs an individualized motivational system and independent activity schedule, neither was incompatible with the instructional method the District employed. **App. 7, 567-70**.

M.A.'s case manager testified about the District's autism program, explaining that classes have no greater than a three-to-one student-to-staff ratio with a maximum enrollment of six students and that students have opportunities to interact with general education students for certain class periods.[6] **App. 122, 2311.**

M.A.'s parents' expert, Dr. Erik A. Mayville, **App. 804, 823, 1898,** testified that the District's "proposal . . . to change M.A.'s program from an intensive educational program based on [ABA] to a less intensive program" with small group instruction was not appropriate for M.A,[7] App. 1903-05, but he did concede that the District's VB method of ABA instruction "could benefit [M.A.] if the program were established appropriately." App. 924.

---

[5] M.A.'s case manager, speech and language specialist, and psychologist agreed that M.A. was ready to transfer to a less restrictive environment. **App. 2314, 2321-22, 2325, 2332-34.**

[6] Teachers also testifed about the autism program offered at the District. **App. 2336, 2344.**

[7] Mayville testified that M.A. "requires intensive, evidenced-based educational interventions" including "instruction delivered in a 1:1 student-to-teacher ratio in the areas of academics, communication, social skills, and adaptive behavior based on the science and principles of ABA." App. 1904. He based this conclusion on his single observation of M.A. spanning an hour and half, and during which he saw that M.A. was unable to ask for help, work independently, and function without a reward system. **App. 888, 1908.** E. Dennis Machado, Assistant Director of SHLI, testified that Dr. Mayville's observations were not consistent with his experience working with M.A. **App. 138, 763-64, 767-68.**

Finally, M.A.'s father testified, expressing skepticism that the District could provide an adequate program for M.A. **App. 10, 495.** He also stated that he believed Brothers recommended transferring M.A. because he felt M.A.'s parents had failed to participate in aspects of SHLI's home training. **App. 10, 516-17.**

The ALJ found that M.A. was not denied a FAPE. **App. 157-59.** The ALJ gave greater weight to the District's witnesses because they "worked directly with M.A. for several years and as such were more reliable indicators of his progress," App. 154, and noted that "Mayville did not preclude a self-contained, in-district classroom as a means of providing an appropriate education to M.A." App. 154. Having credited the District's witnesses, the ALJ then concluded that "the District's plan to place M.A. in a self-contained, [in-district,] age-appropriate autism class based upon the VBN method of ABA instruction is consistent with the requirements of the IDEA." App. 157-58.

M.A.'s parents appealed the ALJ's decisions under the IDEA, RA, and New Jersey's special education laws, and they asserted a retaliation claim against SHLI under Section 504 of the RA that alleged that SHLI failed to update M.A.'s goals and implement his IEP because M.A.'s parents invoked M.A.'s right to "stay put" at SHLI. **App. 18, 47.** M.A.'s parents moved for summary judgment on the claims against the District. **App. 19.** After briefing was completed, they moved to further amend the complaint to add facts about M.A.'s education at SHLI that occurred after the initiation of the lawsuit as well as claims that SHLI: (1) denied M.A. a FAPE under the IDEA, RA, Americans with Disabilities Act ("ADA"), and New Jersey special education laws; (2)

retaliated against M.A. in violation of the ADA; and (3) discriminated against him in violation of the RA and ADA. **App. 89-91.**

The District Court denied the motion for summary judgment and affirmed the ALJ's decisions. **App. 11, 20.** It reasoned that M.A.'s parents received adequate notice of the placement when they were provided a copy of the 2012 IEP and were not prevented from participating in the placement decision as M.A.'s father was present at the June 5, 2012 IEP meeting. **App. 12.** It further explained that the ALJ's determination that the 2012 IEP provided M.A. a FAPE was entitled to "special weight" as it "hinged largely on a credibility determination" and observed that "even [M.A.'s parents' expert] did not preclude a self-contained, in-district classroom as a means of providing an appropriate education to M.A." App. 14. The District Court then denied the motion to amend as moot and dismissed the complaint with prejudice. **App. 15.** M.A.'s parents appeal.[8]

---

[8] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343 and 20 U.S.C. § 1415(i)(2), and we have jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing "an appeal from a state administrative decision under the IDEA, district courts apply a . . . 'modified de novo' review." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010)(internal citations omitted). Under this standard, we exercise plenary review of the district court's legal conclusions but must give "due weight" to the ALJ's fact findings which are "considered prima facie correct." P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 734 (3d Cir. 2009) (internal quotation marks and citations omitted). Where the ALJ hears live testimony, reviewing courts must accept "credibility determinations unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004) (emphasis and internal quotation marks omitted). We review a district court's denial of a motion to amend for abuse of discretion. Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 217 (3d Cir. 2013).

II

A

Congress enacted the IDEA "to ensure that all children with disabilities are provided a [FAPE] which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 (2009) (internal citations and quotation marks omitted). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." Ridley Sch. Dist. v. M.R., 680 F.3d 260, 268-69 (3d Cir. 2012) (internal quotation marks and citations omitted). "When parents challenge a school's provision of a FAPE to a child, a reviewing court must (1) consider whether the school district complied with [the] IDEA's procedural requirements and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits.'" Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 249 (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982)).

1

The IDEA requires prior written notice to parents whenever a school proposes to change the "educational placement of the child, or the provision of a [FAPE]." 20 U.S.C. § 1415(b)(3)(B); see also N.J. Admin. Code § 6A:14-2.3(f)(1). The written notice must contain a "description of the action proposed" by the school district. 20 U.S.C. §

8

1415(c)(1)(A); see also N.J. Admin. Code § 6A:14-2.3(g)(1). In this case, the District provided M.A.'s parents written notice that an IEP meeting would be held for "revision of [M.A.'s] IEP," App. 1285, informed them at the meeting that transfer to a less restrictive setting in a District school was appropriate as M.A.'s current placement was no longer warranted, and provided them with a copy of the 2012 IEP that stated that M.A. would "be transitioning from SHLI . . . to a district special education setting," App. 1592-93.

Although the notice did not identify M.A.'s precise classroom, it was sufficient because the statutes and regulations require only a description of "the general type of educational program in which the child is placed . . . such as the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 419 (2d Cir. 2009) (interpreting 20 U.S.C. § 1414(d)(1)(A)(i)(VII) in light of its legislative history) (internal quotation marks and citations omitted). The 2012 IEP specifically stated that M.A. would be placed in an "autistic" program in an in-district special education classroom, App. 1592-93, and receive "supports" in the form of "a low student/teacher ratio, the opportunity for close monitoring and immediate feedback, individual pacing of instruction throughout the day, a high degree of structure and reinforcement and a high degree of structure and supervision," App. 1588. While the 2012 IEP could have been more detailed, such as by specifying the instructional method the District would employ, we cannot say that the 2012 IEP failed to advise M.A.'s parents of the educational

9

program in which M.A. would be placed.  Therefore, the District did not violate the IDEA's notice requirement.

Even if the notice was deficient, the deficiency is only actionable if it "actually impair[ed] the parents' knowledge of, or participation in, educational decisions."  C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 70 (3d Cir. 2010).  In this case, M.A.'s father attended the June 5, 2012 IEP meeting at which the decision was made to transfer M.A. to an in-district autistic program in a special education classroom and he voiced his skepticism about a public school's ability to provide M.A. the services he needs. Because he participated in the placement decision, any alleged lack of notice is not actionable.  C.H., 606 F.3d at 70 (failure to notify parents of IEP meeting not actionable where mother attended the IEP meeting).  For these reasons, the District Court correctly concluded that no procedural violation occurred.

2

The District Court also correctly concluded that M.A. was offered a FAPE.  The "primary mechanism for delivering a FAPE" is the IEP, which must include an assessment of the child's current educational performance, articulate measurable educational goals, and specify the nature of special services that the school will provide. Ridley, 680 F.3d at 269 (internal quotation marks omitted); 20 U.S.C. § 1414(d)(1). "Although the IEP must provide the student with a 'basic floor of opportunity,' it does not have to provide 'the optimal level of services,' or incorporate every program requested by the child's parents."  Ridley, 680 F.3d at 269 (citations omitted).  It must,

however, be "reasonably calculated to enable the child to receive educational benefits," Mary T., 575 F.3d at 249 (quoting Rowley, 458 U.S. at 206-07), and ensure the child is educated in the least restrictive environment. Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1209 n.6 (3d Cir. 1993). "The issue of whether an IEP is appropriate is a question of fact." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010) (internal citations and quotation marks omitted).

The ALJ and District Court had ample factual basis to conclude that the 2012 IEP was appropriate. The ALJ and District Court considered the contents of the IEP, the District's autism program, and M.A.'s needs.[9] App. 13-15 (District Court analyzing the IEP and the District's autism program referenced therein and concluding that "the 2012 IEP constitutes [a] FAPE" regardless of the identity of the "qualified [t]eacher of the [h]andicapped"), 158 (ALJ analyzing the IEP and "agree[ing] with the District that the proposed placement challenged . . . is a program that can take place in one of several school buildings administered by the District"). As to M.A.'s needs, the ALJ heard testimony from the District about M.A. and how the autism program could benefit him and found the IEP was appropriate. Because this finding was based on the ALJ's credibility determinations, we are bound to accept them as no nontestimonial, extrinsic evidence to the contrary was proffered. For these reasons, we conclude that the ALJ and

---

[9] Although the 2012 IEP did not set forth a particular methodology, this does not mean it fails to comply with the IDEA as "questions of methodology are for resolution by the States." Rowley, 458 U.S. at 208. We decline to hold that references to the VB method of ABA instruction not found in the 2012 IEP but mentioned by both the District Court and ALJ render their findings that the IEP is appropriate unworthy of deference.

District Court correctly found that the District offered M.A. a FAPE and that summary judgment on the IDEA claims was appropriate.[10]

B

The District Court also correctly dismissed the Amended Complaint and denied leave to further amend M.A.'s parents' Section 504 retaliation claim against SHLI.[11] "[R]etaliation claims related to the enforcement of rights under the IDEA must be exhausted before a court may assert subject matter jurisdiction." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 275 (3d Cir. 2014). M.A.'s parents did not raise before the ALJ any claim that SHLI retaliated against M.A. for litigating under the IDEA. Therefore, M.A.'s parents did not exhaust administrative remedies for that claim and the District Court correctly dismissed it. Moreover, the other allegations M.A.'s parents sought to add also required exhaustion of administrative remedies, and because they were not exhausted, amendment would have been futile. Thus, the District Court did not abuse its discretion in denying the motion to amend. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

III

For the foregoing reasons, we will affirm.

---

[10] M.A.'s parents make no separate arguments regarding their RA and New Jersey state law claims against the District and, for the reasons set forth herein, summary judgment on those claims was also appropriate.

[11] The District Court gave no reason for its dismissal of these claims but we may affirm for any reason supported by the record. Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).