Justice Stevens
delivered the opinion of the Court.
The Individuals with Disabilities Education Act (IDEA or Act), 84 Stat. 175, as amended, 20 U. S. C. § 1400 et seq., requires States receiving federal funding to make a “free appropriate public education” (EAPE) available to all children with disabilities residing in the State, § 1412(a)(1)(A). We have previously held that when a public school fails to provide a FAPE and a child’s parents place the child in an appropriate private school without the school district’s consent, a court may require the district to reimburse the parents for the cost of the private education. See School Comm, of Burlington v. Department of Ed. of Mass., 471 U. S. 359, 370 *233 (1985). The question presented in this ease is whether the IDEA Amendments of 1997 (Amendments), 111 Stat. 37, categorically prohibit reimbursement for private-education costs if a child has not “previously received special education and related services under the authority of a public agency.” § 1412(a)(10)(C)(ii). We hold that the Amendments impose no such categorical bar.
I
Respondent T. A. attended public schools in the Forest Grove School District (School District or District) from the time he was in kindergarten through the winter of his junior year of high school. From kindergarten through eighth grade, respondent’s teachers observed that he had trouble paying attention in class and completing his assignments. When respondent entered high school, his difficulties increased.
In December 2000, during respondent’s freshman year, his mother contacted the school counselor to discuss respondent’s problems with his schoolwork. At the end of the school year, respondent was evaluated by a school psychologist. After interviewing him, examining his school records, and administering cognitive ability tests, the psychologist concluded that respondent did not need further testing for any learning disabilities or other health impairments, including attention deficit hyperactivity disorder (ADHD). The psychologist and two other school officials discussed the evaluation results with respondent’s mother in June 2001, and all agreed that respondent did not qualify for special-education services. Respondent’s parents did not seek review of that decision, although the hearing examiner later found that the School District’s evaluation was legally inadequate because it failed to address all areas of suspected disability, including ADHD.
With extensive help from his family, respondent completed his sophomore year at Forest Grove High School, but his problems worsened during his junior year. In February *234 2003, respondent’s parents discussed with the School District the possibility of respondent completing high school through a partnership program with the local community college. They also sought private professional advice, and in March 2003 respondent was diagnosed with ADHD and a number of disabilities related to learning and memory. Advised by the private specialist that respondent would do best in a structured, residential learning environment, respondent’s parents enrolled him at a private academy that focuses on educating children with special needs.
Four days after enrolling him in private school, respondent’s parents hired a lawyer to ascertain their rights and to give the School District written notice of respondent’s private placement. A few weeks later, in April 2003, respondent’s parents requested an administrative due process hearing regarding respondent’s eligibility for special-education services. In June 2003, the District engaged a school psychologist to assist in determining whether respondent had a disability that significantly interfered with his educational performance. Respondent’s parents cooperated with the District during the evaluation process. In July 2003, a multidisciplinary team met to discuss whether respondent satisfied IDEA’S disability criteria and concluded that he did not because his ADHD did not have a sufficiently significant adverse impact on his educational performance. Because the School District maintained that respondent was not eligible for special-education services and therefore declined to provide an individualized education program (IEP),[1] respondent’s parents left him enrolled at the private academy for his senior year.
The administrative review process resumed in September 2003. After considering the parties’ evidence, including the *235 testimony of numerous experts, the hearing officer issued a decision in January 2004 finding that respondent’s ADHD adversely affected his educational performance and that the School District failed to meet its obligations under IDEA in not identifying respondent as a student eligible for special-education services. Because the District did not offer respondent a FAPE and his private-school placement was appropriate under IDEA, the hearing officer ordered the District to reimburse respondent’s parents for the cost of the private-school tuition.[2]
The School District sought judicial review pursuant to § 1415(i)(2), arguing that the hearing officer erred in granting reimbursement. The District Court accepted the hearing officer’s findings of fact but set aside the reimbursement award after finding that the 1997 Amendments categorically bar reimbursement of private-school tuition for students who have not “previously received special education and related services under the authority of a public agency.” §612(a)(10)(C)(ii), 111 Stat. 63, 20 U. S. C. § 1412(a)(10)(C)(ii). The District Court further held that, “[e]ven assuming that tuition reimbursement may be ordered in an extreme case for a student not receiving special education services, under general principles of equity where the need for special education was obvious to school authorities,” the facts of this case do not support equitable relief. App. to Pet. for Cert. 53a.
The Court of Appeals for the Ninth Circuit reversed and remanded for further proceedings. The court first noted that, prior to the 1997 Amendments, “IDEA was silent on the subject of private school reimbursement, but courts had granted such reimbursement as ‘appropriate’ relief under principles of equity pursuant to 20 U. S. C. § 1415(i)(2)(C).” 523 F. 3d 1078, 1085 (2008) (citing Burlington, 471 U. S., at *236 370). It then held that the Amendments do not impose a categorical bar to reimbursement when a parent unilaterally places in private school a child who has not previously received special-education services through the public school. Rather, such students “are eligible for reimbursement, to the same extent as before the 1997 amendments, as ‘appropriate’ relief pursuant to § 1415(i)(2)(C).” 523 F. 3d, at 1087-1088.
The Court of Appeals also rejected the District Court’s analysis of the equities as resting on two legal errors. First, because it found that § 1412(a)(10)(C)(ii) generally bars relief in these circumstances, the District Court wrongly stated that relief was appropriate only if the equities were sufficient to “ ‘override’ ” that statutory limitation. The District Court also erred in asserting that reimbursement is limited to “ ‘extreme’ ” cases. Id., at 1088 (emphasis deleted). The Court of Appeals therefore remanded with instructions to reexamine the equities, including the failure of respondent’s parents to notify the School District before removing respondent from public school. In dissent, Judge Rymer stated her view that reimbursement is not available as an equitable remedy in this case because respondent’s parents did not request an IEP before removing him from public school, and respondent’s right to a FAPE was therefore not at issue.
Because the Courts of Appeals that have considered this question have reached inconsistent results,[3] we granted certiorari to determine whether § 1412(a)(10)(C) establishes a categorical bar to tuition reimbursement for students who have not previously received special-education services *237 under the authority of a public education agency. 555 U. S. 1130 (2009).[4]
II
Justice Rehnquist’s opinion for a unanimous Court in Burlington provides the pertinent background for our analysis of the question presented. In that case, respondent challenged the appropriateness of the IEP developed for his child by public-school officials. The child had previously received special-education services through the public school. While administrative review was pending, private specialists advised respondent that the child would do best in a specialized private educational setting, and respondent enrolled the child in private school without the school district’s consent. The hearing officer concluded that the IEP was not adequate to meet the child’s educational needs and that the school district therefore failed to provide the child a FAPE. Finding also that the private-school placement was appropriate under IDEA, the hearing officer ordered the school district to reimburse respondent for the cost of the private-school tuition.
We granted certiorari in Burlington to determine whether IDEA authorizes reimbursement for the cost of private education when a parent or guardian unilaterally enrolls a child in private school because the public school has proposed an inadequate IEP and thus failed to provide a FAPE. The Act at that time made no express reference to the possibility of reimbursement, but it authorized a court to “grant such relief as the court determines is appropriate.” § 1415(i)(2)(C)(iii).[5] In determining the scope of the relief *238 authorized, we noted that “the ordinary meaning of these words confers broad discretion on the court” and that, absent any indication to the contrary, what relief is “appropriate” must be determined in light of the Act’s broad purpose of providing children with disabilities a FAPE, including through publicly funded private-school placements when necessary. 471 U. S., at 369. Accordingly, we held that the provision’s grant of authority includes “the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act.” Ibid.
Our decision rested in part on the fact that administrative and judicial review of a parent’s complaint often takes years. We concluded that, having mandated that participating States provide a FAPE for every student, Congress could not have intended to require parents to either accept an inadequate public-school education pending adjudication of their claim or bear the cost of a private education if the court ultimately determined that the private placement was proper under the Act. Id., at 370. Eight years later, we unanimously reaffirmed the availability of reimbursement in Florence County School Dish Four v. Carter, 510 U. S. 7 (1993) (holding that reimbursement may be appropriate even when a child is placed in a private school that has not been approved by the State).
The dispute giving rise to the present litigation differs from those in Burlington and Carter in that it concerns not the adequacy of a proposed IEP but the School District’s failure to provide an IEP at all. And, unlike respondent, the children in those cases had previously received public special-education services. These differences are insignificant, however, because our analysis in the earlier cases depended on the language and purpose of the Act and not the particular facts involved. Moreover, when a child requires special-education services, a school district’s failure to pro *239 pose an IEP of any kind is at least as serious a violation of its responsibilities under IDEA as a failure to provide an adequate IEP. It is thus clear that the reasoning of Burlington and Carter applies equally to this case. The only question is whether the 1997 Amendments require a different result.
Ill
Congress enacted IDEA in 1970[6] to ensure that all children with disabilities are provided “ ‘a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected.’” Burlington, 471 U. S., at 367 (quoting 20 U. S. C. § 1400(c) (1982 ed.), now codified as amended at §§ 1400(d)(1)(A), (B)). After examining the States’ progress under IDEA, Congress found in 1997 that substantial gains had been made in the area of special education but that more needed to be done to guarantee children with disabilities adequate access to appropriate services. See S. Rep. No. 105-17, p. 5 (1997). The 1997 Amendments were intended “to place greater emphasis on improving student performance and ensuring that children with disabilities receive a quality public education.” Id., at 3.
Consistent with that goal, the Amendments preserved the Act’s purpose of providing a FAPE to all children with disabilities. And they did not change the text of the provision we considered in Burlington, § 1415(i)(2)(C)(iii), which gives courts broad authority to grant “appropriate” relief, including reimbursement for the cost of private special education when a school district fails to provide a FAPE. “Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation *240 when it re-enacts a statute without change.” Lorillard v. Pons, 434 U. S. 575, 580 (1978). Accordingly, absent a clear expression elsewhere in the Amendments of Congress’ intent to repeal some portion of that provision or to abrogate our decisions in Burlington and Carter, we will continue to read § 1415(i)(2)(C)(iii) to authorize the relief respondent seeks.
The School District and the dissent argue that one of the provisions enacted by the Amendments, § 1412(a)(10)(C), effects such a repeal. Section 1412(a)(10)(C) is entitled “Payment for education of children enrolled in private schools without consent of or referral by the public agency,” and it sets forth a number of principles applicable to public reimbursement for the costs of unilateral private-school placements. Section 1412(a)(10)(C)(i) states that IDEA “does not require a local educational agency to pay for the cost of education ... of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child” and his parents nevertheless elected to place him in a private school. Section 1412(a)(10)(C)(ii) then provides that a “court or hearing officer may require [a public] agency to reimburse the parents for the cost of [private-school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available” and the child has “previously received special education and related services under the authority of [the] agency.” Finally, § 1412(a)(10)(C)(iii) discusses circumstances under which the “cost of reimbursement described in clause (ii) may be reduced or denied,” as when a parent fails to give 10 days’ notice before removing a child from public school or refuses to make a child available for evaluation, and § 1412(a)(10)(C)(iv) lists circumstances in which a parent’s failure to give notice may or must be excused.[7]
*241 Looking primarily to clauses (i) and (ii), the School District argues that Congress intended § 1412(a)(10)(C) to provide the exclusive source of authority for courts to order reimbursement when parents unilaterally enroll a child in private school. According to the District, clause (i) provides a safe harbor for school districts that provide a FAPE by foreclosing reimbursement in those circumstances. Clause (ii) then sets forth the circumstance in which reimbursement is appropriate — namely, when a school district fails to provide a FAPE to a child who has previously received special-education services through the public school. The District contends that because § 1412(a)(10)(C) only discusses reimbursement for children who have previously received special-education services through the public school, IDEA only authorizes reimbursement in that circumstance. The dissent agrees.
For several reasons, we find this argument unpersuasive. First, the School District’s reading of the Act is not supported by its text and context, as the 1997 Amendments do not expressly prohibit reimbursement under the circumstances of this case, and the District offers no evidence that Congress intended to supersede our decisions in Burlington and Carter. Clause (i)’s safe harbor explicitly bars reimbursement only when a school district makes a FAPE available by correctly identifying a child as having a disability and proposing an IEP adequate to meet the child’s needs. The clause says nothing about the availability of reimbursement when a school district fails to provide a FAPE. Indeed, its statement that reimbursement is not authorized when a school district provides a FAPE could be read to indicate that reimbursement is authorized when a school district does not fulfill that obligation.
Clause (ii) likewise does not support the District’s position. Because that clause is phrased permissively, stating only that courts “may require” reimbursement in those circumstances, it does not foreclose reimbursement awards in other circum *242 stances. Together with clauses (iii) and (iv), clause (ii) is best read as elaborating on the general rule that courts may order reimbursement when a school district fails to provide a FAPE by listing factors that may affect a reimbursement award in the common situation in which a school district has provided a child with some special-education services and the child’s parents believe those services are inadequate. Referring as they do to students who have previously received special-education services through a public school, clauses (ii) through (iv) are premised on a history of cooperation and together encourage school districts and parents to continue to cooperate in developing and implementing an appropriate IEP before resorting to a unilateral private placement.[8] The clauses of § 1412(a)(10)(C) are thus best read as elucidative rather than exhaustive. Cf. United States v. Atlantic Research Corp., 551 U. S. 128, 137 (2007) (noting that statutory language may “perfor[m] a significant function simply by clarifying” a provision’s meaning).[9]
*243 This reading of § 1412(a)(10)(C) is necessary to avoid the conclusion that Congress abrogated sub silentio our decisions in Burlington and Carter. In those cases, we construed § 1415(i)(2)(C)(iii) to authorize reimbursement when a school district fails to provide a FAPE and a child’s private-school placement is appropriate, without regard to the child’s prior receipt of services.[10] It would take more than Congress’ failure to comment on the category of cases in which a child has not previously received special-education services for us to conclude that the Amendments substantially superseded our decisions and in large part repealed § 1415(i)(2)(C)(iii). See Branch v. Smith, 538 U. S. 254, 273 (2003) (plurality opinion) (“[A]bsent a clearly expressed congressional intention, repeals by implication are not favored” (internal quotation marks and citation omit *244 ted)).[11] We accordingly adopt the reading of § 1412(a)(10)(C) that is consistent with those decisions.[12]
The School District’s reading of § 1412(a)(10)(C) is also at odds with the general remedial purpose underlying IDEA and the 1997 Amendments. The express purpose of the Act is to “ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs,” § 1400(d)(1)(A) — a factor we took into account in construing the scope of § 1415(i)(2)(C)(iii), see Burlington, 471 U. S., at 369. Without the remedy respondent seeks, a “child’s right to a free appropriate education . . . would be *245 less than complete.” Id., at 370. The District’s position similarly conflicts with IDEA’S “child find” requirement, pursuant to which States are obligated to “identif[y], locat[e], and evaluat[e]” “[a]ll children with disabilities residing in the State” to ensure that they receive needed special-education services. § 1412(a)(3)(A); see § 1412(a)(10)(A)(ii). A reading of the Act that left parents without an adequate remedy when a school district unreasonably failed to identify a child with disabilities would not comport with Congress’ acknowledgment of the paramount importance of properly identifying each child eligible for services.
Indeed, by immunizing a school district’s refusal to find a child eligible for special-education services no matter how compelling the child’s need, the School District’s interpretation of § 1412(a)(10)(C) would produce a rule bordering on the irrational. It would be particularly strange for the Act to provide a remedy, as all agree it does, when a school district offers a child inadequate special-education services but to leave parents without relief in the more egregious situation in which the school district unreasonably denies a child access to such services altogether. That IDEA affords parents substantial procedural safeguards, including the right to challenge a school district’s eligibility determination and obtain prospective relief, see post, at 258-259, is no answer. We roundly rejected that argument in Burlington, observing that the “review process is ponderous” and therefore inadequate to ensure that a school’s failure to provide a FAPE is remedied with the speed necessary to avoid detriment to the child’s education. 471 U. S., at 370. Like Burlington, see ibid., this case vividly demonstrates the problem of delay, as respondent’s parents first sought a due process hearing in April 2003, and the District Court issued its decision in May 2005 — almost a year after respondent graduated from high school. The dissent all but ignores these shortcomings of IDEA’S procedural safeguards.
*246 IV
The School District advances two additional arguments for reading the Act to foreclose reimbursement in this case. First, the District contends that because IDEA was an exercise of Congress’ authority under the Spending Clause, U. S. Const., Art. I, §8, cl. 1, any conditions attached to a State’s acceptance of funds must be stated unambiguously. See Pennhurst State School and Hospital v. Halderman, 451 U. S. 1, 17 (1981). Applying that principle, we held in Arlington Central School Dist. Bd. of Ed. v. Murphy, 548 U. S. 291, 304 (2006), that IDEA’S fee-shifting provision, § 1415(i)(3)(B), does not authorize courts to award expert-services fees to prevailing parents in IDEA actions because the Act does not put States on notice of the possibility of such awards. But Arlington is readily distinguishable from this case. In accepting IDEA funding, States expressly agree to provide a FAPE to all children with disabilities. See § 1412(a)(1)(A). An order awarding reimbursement of private-education costs when a school district fails to provide a FAPE merely requires the district “to belatedly pay expenses that it should have paid all along.” Burlington, 471 U. S., at 370-371. And States have in any event been on notice at least since our decision in Burlington that IDEA authorizes courts to order reimbursement of the costs of private special-education services in appropriate circumstances. Pennhurst’s notice requirement is thus clearly satisfied.
Finally, the District urges that respondent’s reading of the Act will impose a substantial financial burden on public-school districts and encourage parents to immediately enroll their children in private school without first endeavoring to cooperate with the school district. The dissent echoes this concern. See post, at 258. For several reasons, those fears are unfounded. Parents “are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act.” Carter, 510 U. S., at 15. And even *247 then courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant — for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school. In considering the equities, courts should generally presume that public-school officials are properly performing their obligations under IDEA. See Schaffer v. Weast, 546 U. S. 49, 62-63 (2005) (Stevens, J., concurring). As a result of these criteria and the fact that parents who “ ‘unilaterally change their child’s placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk,’ ” Carter, 510 U. S., at 15 (quoting Burlington, 471 U. S., at 373-374), the incidence of private-school placement at public expense is quite small, see Brief for National Disability Rights Network et al. as Amici Curiae 13-14.
V
The IDEA Amendments of 1997 did not modify the text of § 1415(i)(2)(C)(iii), and we do not read § 1412(a)(10)(C) to alter that provision’s meaning. Consistent with our decisions in Burlington and Carter, we conclude that IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate, regardless of whether the child previously received special education or related services through the public school.
When a court or hearing officer concludes that a school district failed to provide a PAPE and the private placement was suitable, it must consider all relevant factors, including the notice provided by the parents and the school district’s opportunities for evaluating the child, in determining whether reimbursement for some or all of the cost of the child’s private education is warranted. As the Court of Appeals noted, the District Court did not properly consider the equities in this case and will need to undertake that analysis on remand. Accordingly, the judgment of the Court of Ap *248 peals is affirmed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

APPENDIX
Title 20 U. S. C. § 1412(a)(10)(C) provides:
“(C) Payment for education of children enrolled in private schools without consent of or referral by the public agency
“(i) In general
“Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.
“(ii) Reimbursement for private school placement “If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.
“(iii) Limitation on reimbursement
“The cost of reimbursement described in clause (ii) may be reduced or denied—
“(I) if-
“(aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appro *249 priate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
“(bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);
“(II) if, prior to the parents’ removal of the child from the public school, the public agency informed the parents, through the notice requirements described in section 1415(b)(3) of this title, of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation; or
“(III) upon a judicial finding of unreasonableness with respect to actions taken by the parents.”

An IEP is an education plan tailored to a child’s unique needs that is designed by the school district in consultation with the child’s parents after the child is identified as eligible for special-education services. See 20 U. S. C. §§ 1412(a)(4), 1414(d).

 Although it was respondent’s parents who initially sought reimbursement, when respondent reached the age of majority in 2003 his parents’ rights under IDEA transferred to him pursuant to Ore. Admin. Rule 581-015-2325(1) (2008).

 Compare Frank G. v. Board of Ed. of Hyde Park, 459 F. 3d 356, 376 (CA2 2006) (holding that § 1412(a)(10)(C)(ii) does not bar reimbursement for students who have not previously received public special-education services), and M. M. v. School Bd. of Miami-Dade-Cty., Fla., 437 F. 3d 1085, 1099 (CA11 2006) (per curiam) (same), with Greenland School Dish v. Amy N., 358 F. 3d 150, 159-160 (CA1 2004) (finding reimbursement barred in those circumstances).

 We previously granted certiorari to address this question in Board of Ed. of City School Dist. of New York v. Tom F., 552 U. S. 1 (2007), in which we affirmed without opinion the judgment of the Court of Appeals for the Second Circuit by an equally divided vote.

 At the time we decided Burlington, that provision was codified at § 1415(e)(2). The 1997 Amendments renumbered the provision but did not alter its text. For ease of reference, we refer to the provision by its current section number, § 1415(i)(2)(C)(iii).

 The legislation was enacted as the Education of the Handicapped Act, Title VI of Pub. L. 91-230, 84 Stat. 175, and was renamed the Individuals with Disabilities Education Act in 1990, see § 901(a)(3), Pub. L. 101-476, 104 Stat. 1142.

 The full text of § 1412(a)(10)(C) is set forth in the Appendix, infra, at 248.

 The dissent asserts that, under this reading of the Act, “Congress has called for reducing reimbursement only for the most deserving . . . but provided no mechanism to reduce reimbursement to the least deserving.” Post, at 254 (opinion of Souter, J.). In addition to making unsubstantiated generalizations about the desert of parents whose children have been denied public special-education services, the dissent grossly mischaracterizes our view of § 1412(a)(10)(C). The fact that clause (iii) permits a court to reduce a reimbursement award when a parent whose child has previously received special-education services fails to give the school adequate notice of an intended private placement does not mean that it prohibits courts from similarly reducing the amount of reimbursement when a parent whose child has not previously received services fails to give such notice. Like clause (ii), clause (iii) provides guidance regarding the appropriateness of relief in a common factual scenario, and its instructions should not be understood to preclude courts and hearing officers from considering similar factors in other scenarios.

 In arguing that § 1412(a)(10)(C) is the exclusive source of authority for granting reimbursement awards to parents who unilaterally place a child *243 in private school, the dissent neglects to explain that provision’s failure to limit the type of private-school placements for which parents may be reimbursed. School Comm. of Burlington v. Department of Ed. of Mass., 471 U. S. 359 (1985), held that courts may grant reimbursement under § 1415(i) (2) (C) (iii) only when a school district fails to provide a FAPE and the private-school placement is appropriate. See id., at 369; see Florence County School Dish Four v. Carter, 510 U. S. 7, 12-13 (1993). The latter requirement is essential to ensuring that reimbursement awards are granted only when such relief furthers the purposes of the Act. See Burlington, 471 U. S., at 369. That § 1412(a)(10)(C) did not codify that requirement further indicates that Congress did not intend that provision to supplant § 1415(i)(2)(C)(iii) as the sole authority on reimbursement awards but rather meant to augment the latter provision and our decisions construing it.

 As discussed above, although the children in Burlington and Carter had previously received special-education services in public school, our decisions in no way depended on their prior receipt of services. Those holdings rested instead on the breadth of the authority conferred by § 1415(i)(2)(C)(iii), the interest in providing relief consistent with the Act’s purpose, and the injustice that a contrary reading would produce, see Burlington, 471 U. S., at 369-370; see also Carter, 510 U. S., at 12-14 — considerations that were not altered by the 1997 Amendments.

 For the same reason, we reject the District’s argument that because § 1412(a)(10)(C)(ii) authorizes “a court or a hearing officer” to award reimbursement for private-school tuition, whereas § 1415(i)(2)(C)(iii) only provides a general grant of remedial authority to “court[s],” the latter section cannot be read to authorize hearing officers to award reimbursement. That argument ignores our decision in Burlington, 471 U. S., at 363, 370, which interpreted § 1415(i) (2) (C) (iii) to authorize hearing officers as well as courts to award reimbursement notwithstanding the provision’s silence with regard to hearing officers. When Congress amended IDEA without altering the text of § 1415 (i) (2) (C)(iii), it implicitly adopted that construction of the statute. See Lorillard v. Pons, 434 U. S. 575, 580-581 (1978).

 Looking to the Amendments’ legislative history for support, the School District cites two House and Senate Reports that essentially restate the text of § 1412(a)(10)(C)(ii), H. R. Rep. No. 105-95, pp. 92-93 (1997); S. Rep. No. 105-17, p. 13 (1997), and a floor statement by Representative Mike Castle, 143 Cong. Rec. 8013 (1997) (stating that the “bill makes it harder for parents to unilaterally place a child in elite private schools at public taxpayer expense, lowering costs to local school districts”). Those ambiguous references do not undermine the meaning that we discern from the statute’s language and context.
Notably, the agency charged with implementing IDEA has adopted respondent’s reading of the statute. In commentary to regulations implementing the 1997 Amendments, the Department of Education stated that “hearing officers and courts retain their authority, recognized in Burlington ... to award ‘appropriate’ relief if a public agency has failed to provide FAPE, including reimbursement ... in instances in which the child has not yet received special education and related services.” 64 Fed. Reg. 12602 (1999); see 71 Fed. Reg. 46599 (2006).