NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCIT
_____

No. 14-1733
_____

W.D., individually; W.D. on behalf of W.C.D.,
Appellant

v.

WATCHUNG HILLS REGIONAL HIGH SCHOOL BOARD OF EDUCATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-13-cv-03423)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 13, 2015

Before:  CHAGARES, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: March 6, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

    W.D., in his own right and on behalf of W.C.D., appeals an order of the United

States District Court for the District of New Jersey granting summary judgment against

---

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

him and in favor of the Watchung Hills Regional High School Board of Education ("Watchung Hills"). Because the District Court did not err in concluding that W.D. was not entitled to tuition reimbursement and that Watchung Hills did not violate W.D.'s rights under the Individuals with Disabilities Education Act ("IDEA"), we will affirm.

## I.     Background

W.C.D. is the minor son of W.D. and has been diagnosed with certain learning disabilities, including dyslexia and Attention Deficit Hyperactivity Disorder. He was initially classified as eligible for special education in first grade, "due to difficulties in word decoding, reading comprehension, written expression and math skills." (App. at 20 (internal quotation marks omitted).) Throughout elementary school and until the end of the eighth grade, he received special education services. He also followed an Individualized Education Program ("IEP") tailored to meet his educational needs. In anticipation of W.C.D.'s move from middle school to high school, members of a transition IEP team, a group that included school officials, met with W.D. on March 28, 2012 to review and revise W.C.D.'s IEP for the rest of eighth grade and ninth grade. During that meeting, W.D. expressed concern regarding W.C.D.'s poor progress in school, but no change to the IEP was proposed. In June 2012, W.D. obtained an undated neuropsychological evaluation of W.C.D. by Kathleen Bergeson, Ph.D., who concluded that W.C.D.'s disabilities were not being adequately addressed at his current school. Based on that evaluation, on July 10, 2012, W.D. submitted an application for W.C.D. to attend "The Forman School," a private college preparatory boarding school in Litchfield, Connecticut, where W.D. believed his son's needs would be better addressed. On

2

August 7, 2012, W.C.D. was accepted to The Forman School, and less than a week later, on August 13, 2012, W.D. signed an enrollment agreement and paid the tuition to secure a place for W.C.D. in the fall. On August 24, 2012, W.D. sent a letter through his attorney to Watchung Hills, stating his intent to obtain private placement for his son and to seek tuition reimbursement from Watchung Hills. Soon after, on September 5, 2012, W.D.'s attorney sent another letter to Watchung Hills, enclosing a copy of Dr. Bergeson's June evaluation report.

In response to the August 24 letter, the IEP team met with W.D. on September 7, 2012. During that meeting, the IEP team suggested adding a "Developmental Reading Program" to the IEP and provided general information about the program. Even though W.C.D. was already enrolled in The Forman School, W.D. requested more specific information about the proposed program – namely, the name of the reading program being used, whether the program provided training or certification, and if so, whether the person assigned to implement the program had received such training or certification. Members of the IEP team, however, only responded that the program would be "research-based," focused on "phonic skills and comprehension," and taught by a "certified teacher." (App. at 83.) During the course of the meeting, Watchung Hills learned that W.C.D. was, at that very time, attending The Forman School's orientation program. Soon after that revelation, Watchung Hills terminated the meeting. Nevertheless, on September 21, 2012, Watchung Hills sent W.D. a finalized IEP, which incorporated some of Dr. Bergeson's recommendations, and offered W.D. the opportunity to personally observe the proposed in-district program. There is no evidence

3

that W.D. ever took advantage of that offer.  Instead, W.C.D. began classes at The Forman School on September 10, 2012, and has remained there since.

On October 11, 2012, W.D. filed a request for a due process hearing with the New Jersey Department of Education, seeking reimbursement for the cost of W.C.D.'s private school placement.  W.D. also claimed that his procedural rights were violated under the IDEA and that W.C.D. was denied a "free appropriate public education" ("FAPE") because Watchung Hills refused to share basic information regarding the reading program.  At a hearing before the New Jersey Office of Administrative Law, an Administrative Law Judge ("ALJ") dismissed W.D.'s claims for reimbursement on the grounds that the notice letter was untimely, and further dismissed the procedural violation claim on the grounds that W.D. did not have a right to the requested information.  W.D. appealed the ALJ's decision to the District Court, which affirmed the ruling on both points and granted summary judgment in favor of Watchung Hills.  W.D. timely appealed.[1]

---

[1] In support of W.D.'s position that his procedural rights under the IDEA were violated, the Advocates for Children of New Jersey, Disability Rights New Jersey, the Education and Health Law Clinic at the Rutgers University School of Law – Newark, the Education Law Center, and the Statewide Parent Advocacy Network of New Jersey collectively submitted an amicus curiae brief.  The New Jersey Chapter of the International Dyslexia Association also submitted an amicus curiae brief in support of W.D.

## II.    Discussion[2]

W.D. argues that the District Court erred in dismissing his reimbursement claim based on his alleged failure to comply with the IDEA's notice requirements before considering the merits of his FAPE claim.  He also argues it was error to conclude that his procedural rights were not violated when – in his view – Watchung Hills refused him a meaningful opportunity to participate in the IEP decision-making process.  Neither contention is meritorious.

The IDEA requires that a state receiving federal education funding provide a FAPE to disabled children.  20 U.S.C. § 1412(a)(1).  "Parents who believe that a public school is not providing a FAPE may unilaterally remove their disabled child from that school, place him or her in another school, and seek tuition reimbursement for the cost of the alternate placement."  *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 242 (3d Cir.

---

[2] The District Court had jurisdiction under 20 U.S.C. § 1415(i)(3) and we have jurisdiction pursuant to 28 U.S.C. § 1291.  "When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified de novo' review.  Under this standard, a district court must give 'due weight' and deference to the findings in the administrative proceedings."  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citations omitted).  "We, in turn, review the District Court's factual findings for clear error … [and] exercise plenary review over the legal standards applied by the District Court and over its legal conclusions."  *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 241-42 (3d Cir. 2009).  Insofar as W.D. contends that we should apply a non-deferential standard of review because the ALJ did not hold an evidentiary hearing or hear live testimony, he cites no case law for support and, in fact, we have suggested otherwise.  *See Bayonne*, 602 F.3d at 564 (implying that, even when an ALJ does not hear live testimony, a district court exercises modified de novo review).  If we were to apply the more stringent review advocated by W.D., however, our decision today would be the same.

5

2009) (citing 20 U.S.C. § 1412(a)(10)(c)). "[P]arents who unilaterally change their child's placement," however, "without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373-74 (1985).

"[The] IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate … ." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009). "Even where a District is found to be in violation of … [the] IDEA and private school placement is deemed appropriate," though, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 71 (3d Cir. 2010) (internal quotation marks omitted). Indeed, the statute itself provides that reimbursement may be reduced or denied in certain circumstances, such as when parents have failed to provide written notice to the school of their intent to unilaterally remove the student and seek reimbursement at least 10 business days prior to removal, 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb), or when a judicial body finds the parental actions unreasonable, *id.* § 1412(a)(10)(C)(iii)(III).

Here, W.D. did not follow the notice requirements set out in the statute and thus the District Court did not err in denying his reimbursement claim. W.D. notified Watchung Hills of his intent to remove his son from the school district less than 10 business days prior to W.C.D. starting orientation at The Forman School, and several

6

days after W.D. had enrolled W.C.D. in that school and paid the first year's tuition.[3] We, and other courts, have previously denied reimbursement when, as in this instance, the parent fails to satisfy the "obligation to cooperate and assist in the formulation of an IEP, and … to timely notify the District of [the] intent to seek private school tuition

---

[3] Before the ALJ, W.D. argued that he provided timely notice when he sent the August 24, 2012 letter because W.C.D. was not "removed" until either September 10, 2012 (the first day of class at The Forman School), or, alternatively, September 11, 2012 (the first day of class at Watchung Hills). Although W.D. makes that same argument in his reply brief, he makes only conclusory references to timeliness in his opening brief. To the extent that W.D. has not forfeited the argument, we are satisfied, as was the District Court, that the ALJ properly determined that W.D. did not provide adequate notice to Watchung Hills, regardless of whether we adopt a broad or narrow interpretation of "removal."

As the record shows, W.D. signed an enrollment agreement with The Forman School on August 13, 2012, which stated, "By signing this Forman School Agreement I enroll [W.C.D.] in the 9th grade as a boarding student for the 2012-2013 academic school year at The Forman School, Inc." (App. at 370.) The record further shows that, on August 16, 2012, W.D. paid the full first-year tuition of $61,700 to The Forman School. We agree with the ALJ that "[b]ased on the timeline of events in this case, the written notice to [Watchung Hills] was a *fait accompli* … . The tardy written notice only advised of an accomplished placement as opposed to serving as notice of intent to place … ." (App. at 105.) We further agree with the ALJ's conclusion that, "[e]ven if [W.D.] had not foreclosed the possibility of his son's return to Watchung, the available evidence strongly supports the conclusion that W.D. was very unlikely to do so unless he felt the respondent made a better offer than Forman, something the IDEA does not require." (App. at 106.)

Contrary to W.D.'s assertion, the United States District Court for the District of Maryland's decision in *Sarah M. v. Weast*, 111 F. Supp. 2d 695 (D. Md. 2000), does not compel a different result. In *Weast*, the District Court held that "'removal' … refers to the actual physical removal of the child from public school" and thus notice must be given 10 business days before the date on which the child is "physically placed in private school." *Id.* at 701; *see also* 3 Americans with Disabilities: Practice & Compliance Manual § 11:115 (updated 2015) (adopting *Weast*'s interpretation of "removal"). Even if we were to agree with that interpretation of "removal" – and we do not need to go that far in this case – W.C.D. was physically placed in The Forman School on September 6, 2012 when he was attending the private school's orientation. Because section 1412(a)(10)(C)(iii)(I)(bb) of title 20 requires notice of at least 10 business days (including holidays), W.D.'s August 24, 2012 letter was still untimely.

reimbursement." *Cape Henlopen*, 606 F.3d at 72 ("The IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations."); *see also Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462, 469 (7th Cir. 2000) (noting that courts "look harshly upon any party's failure to reasonably cooperate with another's diligent execution of their rights and obligations under IDEA").

W.D. contends that the District Court erred by treating his inadequate notice of removal as a complete bar to his reimbursement claim, without first evaluating whether Watchung Hills had denied his son a FAPE. As W.D. sees it, the District Court thus failed to properly consider all relevant factors – such as the merits of his FAPE claim or the propriety of Watchung Hills's conduct – to determine whether equitable considerations favor reimbursement. But W.D.'s argument is unpersuasive because the IDEA and its implementing regulations allow for the denial of reimbursement – regardless of the school district's conduct – if, as in this case, a parent does not provide timely notice of removal.[4] 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb). The District Court therefore did not err in dismissing W.D.'s reimbursement claim.

---

[4] We do not hold that a parent's failure to provide timely notice of removal to a school district will, in every situation, bar tuition reimbursement. There may be circumstances in which a balance of the equities supports tuition reimbursement despite a parent's untimely notice of removal, but we agree, as did the District Court, with the ALJ's assessment that W.D. was not entitled to tuition reimbursement. While it would have been preferable for the ALJ to explicitly weigh the equities, the record here reflects that W.D. engaged in an after-the-fact effort to excuse his inadequate notice by questioning the school district's proffered IEP, and, given the totality of the record, that is sufficient both to explain and sustain the ALJ's determination.

8

W.D. also argues that his procedural rights under the IDEA were violated when Watchung Hills refused to adequately respond to his inquiries regarding the methodology that would be used in the Developmental Reading Program and the related teacher qualifications. He contends that without such basic information about the reading program, W.D. was denied "'an opportunity for meaningful input into all decisions'" affecting his son's education. *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 82 (3d Cir. 1996) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

That argument falls short because W.D. has not shown any violation of a specific IDEA provision or regulation. As noted in the Federal Register, "nothing in [the IDEA] … requires an IEP to include specific instructional methodologies. ... The Department[ of Education]'s long-standing position on including instructional methodologies in a child's IEP is that it is an IEP Team's decision." 71 Fed. Reg. 46,540, 46,665 (August 14, 2006). Similarly, with some limited exceptions not applicable here, "nothing in [the IDEA] … require[s] schools … to provide parents with information about the qualification of their child's teachers and other service providers." *Id.* at 46,561.

W.D. was not denied an opportunity to meaningfully participate in W.C.D.'s education plan. At the IEP meeting, Watchung Hills advised W.D. that the Developmental Reading Program would use a research-based methodology, would be taught by a certified special education teacher, and would emphasize phonics skills and reading comprehension. Furthermore, the finalized IEP that Watchung Hills offered after the September 7, 2012 meeting contained a written offer for W.D. to personally observe the proposed in-district program – an offer that W.D. apparently declined. Thus, W.D.

9

has not sufficiently alleged any procedural violation of the IDEA nor a denial of a FAPE for his son. *See Bayonne*, 602 F.3d at 565 ("A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits.").

## III. Conclusion

For the foregoing reasons, we will affirm the District Court's grant of summary judgment for Watchung Hills.