ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| G.M.P.I., por conducto de su madre con patria potestad, MARÍA EUGENIA IZQUIERDO SAN MIGUEL<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>Recurrido | **KLRA202300264** | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Educación<br><br>Caso Núm.: QEE-2223-26-10-00552<br><br>Sobre: Educación Especial: Alimentos Escolares, Terapia Cognitiva y otros. |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio y el Juez Rodríguez Flores.[1]

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante este foro la señora María Eugenia Izquierdo San Miguel (en adelante, señora Izquierdo o recurrente), en representación de su hijo menor de edad (en adelante, G.M.P.I.) y nos solicita que revisemos una *Resolución* emitida por el Departamento de Educación (en adelante, Depto. de Educación o la agencia recurrida) la cual fue notificada el 11 de mayo de 2023. Mediante esta, la agencia recurrida le negó a la recurrente un reembolso solicitado por concepto de servicios recibidos por G.M.P.I., quien es participante del Programa de Educación Especial.

Por los fundamentos que se exponen a continuación, **MODIFICAMOS** la *Resolución* recurrida para REVOCAR la misma en cuanto a la denegación del reembolso por el

---

[1] En virtud de la Orden Administrativa Núm. OATA-2023-116, se designó al Hon. Fernando Rodríguez Flores, para entender y votar, en sustitución de la Hon. Olga Birriel Cardona, quien se acogió al retiro.

pago de alimentos y **CONFIRMAMOS** lo dispuesto en cuanto a lo demás.

I.

El 19 de octubre de 2022, la señora Izquierdo, en representación de su hijo menor de edad G.M.P.I. presentó una *Querella* ante el Depto. de Educación. Mediante esta, solicitó la compra de servicios educativos y los reembolsos de pagos por: (1) alimentos, (2) terapias cognitivas y (3) computadora.[2]

El 29 de octubre de 2022, el Depto. de Educación presentó su *Contestación a Querella* en la cual informó que habían aprobado, como remedio provisional, un reembolso limitado a matricula, mensualidades y libros.[3]

No obstante, tras varios incidentes procesales, las partes acordaron someter memorandos de derecho en relación con el reembolso de alimentos.

Así las cosas, el 28 de febrero de 2023, el Depto. de Educación presentó su *Memorando de Derecho sobre la Alegada Obligación del Pago de Almuerzo a Estudiantes Ubicados a Costo Público en Escuelas Privadas*.[4] Allí se argumentó que la agencia recurrida no tenía la obligación de reembolsar el gasto de alimentos debido a que las comidas gratuitas no fueron parte de la propuesta del colegio privado para ofrecer al estudiante "*Free Appropiate Public Education*" conocido como FAPE bajo la ley federal *Individuals with Disabilities Education Improvement Act*, 20 USCA secs. 1400 et seq., (en adelante, IDEA) ni estaba contemplado en el Programa

---

[2] Querella, anejo I, págs. 1-14 del apéndice de la recurrente.
[3] Contestación a Querella, anejo II, págs. 15-19 del apéndice de la recurrente.
[4] Memorando de Derecho sobre la Alegada Obligación del Pago de Almuerzo a Estudiantes Ubicados a Costo Público en Escuelas Privadas anejo XIV, págs. 68-73 del apéndice de la recurrente.

Educativo Individualizado, conocido como PEI, del estudiante G.M.P.I. *Íd.*

Igualmente, el 20 de marzo de 2023, la señora Izquierdo presentó el *Memorando sobre Pago de Alimentos Escolares a Estudiante Ubicado a Costo Público en Escuelas Privadas*.[5] En síntesis, expuso que el Depto. de Educación tenía la obligación de reembolsar el gasto de alimento bajo el fundamento de que el estudiante G.M.P.I. debe ser tratado en igualdad de condiciones que un estudiante ubicado en escuela pública, puesto que, si el sistema público contara con una escuela apropiada, no hubiesen incurrido en tales gastos. *Íd.*

Finalmente, el 25 de abril de 2023, se celebró la vista administrativa en su fondo mediante videoconferencia. El desfile de prueba inició con el testimonio pericial de la señora Marlene de Varona Vega, terapista cognitiva, y finalizó con el testimonio de la señora Izquierdo.

Así las cosas, el 11 de mayo de 2023, la agencia recurrida dictó *Resolución Final y Orden* en la cual declaró *Ha Lugar* el reembolso del pago de computadora y *No Ha Lugar* los demás reembolsos solicitados.[6] Allí, se consignó las siguientes determinaciones de hechos:

1. El estudiante querellante está registrado y es elegible para recibir los servicios educativos y relacionados del Programa de Educación Especial del Departamento de Educación. Tiene un diagnóstico de Problemas Específicos de Aprendizaje.
[…]
3. El estudiante requiere de una ubicación en un salón de corriente regular con promoción de grado y un grupo reducido de estudiante de su misma edad y de igual dominio de destrezas académicas.

---

[5] Memorando sobre Pago de Alimentos Escolares a Estudiante Ubicado a Costo Público en Escuelas Privadas, anejo XVII, págs. 80-90 del apéndice de la recurrente.
[6] Resolución Final y Orden, anejo XXI, págs. 252-263 del apéndice de la recurrente.

4. La madre del estudiante pagó privadamente por las terapias cognitiva, los alimentos escolares y una computadora.

[…]

7. En la reunión del COMPU realizada el 11 de julio de 2022, el Departamento de Educación reconoció que no cuenta con la alternativa de ubicación apropiada para el joven.

8. El estudiante tiene recomendado en su Programa Educativo Individualizado del año escolar 2022-2023 los siguientes servicios relacionados, terapia educativa de manera individual tres veces por semana por 60 minutos, terapia psicológica, de manera individual una vez por semana por 45 minutos, terapia de habla y lenguaje de manera grupal una vez por semana por 45 minutos.

9. El 12 de agosto de 2022 la SAEE emitió una carta de aprobación de reembolso por servicios educativos para el año escolar 2022-2023.

[…]

11. Los alimentos escolares no son provistos por la Agencia, ni por la institución privada donde el estudiante recibe los servicios educativos.

12. Los alimentos escolares son suplidos por un concesionario que provee los desayunos y almuerzos en una cafetería localizada en la escuela y que, factura a los padres de acuerdo con lo que consume el estudiante.[7]

Además, el Depto. de Educación añadió las siguientes advertencias legales en su *Resolución*:

Según establece en 20 U.S.C 1415(i)(1)(A) y el 34 CFR 300.514(a) se les advierte a las partes que esta resolución es final, por lo que no procede la solicitud de reconsideración ante este foro administrativo.

Se apercibe que, cualquier parte perjudicada por esta Resolución podrá acudir en Revisión al Tribunal de Apelaciones del Estado Libre Asociado dentro del termino de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017 y 20 U.S.C. 1415(i)(2)(b).

Se apercibe que cualquier parte agraviada por esta Resolución podrá iniciar una acción civil en el Tribunal de los EE.UU. para el Distrito de Puerto Rico o en el Tribunal de Primera Instancia del Tribunal General de Justicia, en el termino de noventa (90) días a partir de la fecha de su archivo en autos, según establece el 20 U.S.C. 1415(i)(2) y 34 CFR 300.516(a).[8]

Inconforme con dicha determinación, el 9 de junio de 2023, la señora Izquierdo acude ante este Tribunal

---

[7] Íd., págs. 256-257.
[8] Íd., págs. 262-263.

mediante *Recurso de Revisión Administrativa* y adujo que el Depto. de Educación cometió los siguientes errores:

**PRIMER SEÑALAMIENTO DE ERROR:** Erró el foro administrativo recurrido al resolver que no procede el reembolso por los desayunos y almuerzos que recibe el menor querellante en la escuela privada donde ha estado ubicado por el propio Departamento de Educación ante la falta de una alternativa de ubicación en el mercado público.

**SEGUNDO SEÑALAMIENTO DE ERROR:** Erró el foro administrativo recurrido al denegar el reembolso por lo pagado por las terapias cognitivas que son necesaria para el aprovechamiento escolar del menor y que son parte de su derecho a una educación pública gratuita y apropiada.

**TERCER SEÑALAMIENTO DE ERROR:** Erró el foro administrativo en su apreciación de la totalidad de la prueba oral presentada por la parte querellante-recurrente al obviar por completo la evidencia sobre las necesidades cognitivas del menor, sobre la necesidad de tales terapias para su aprovechamiento académico y sobre su derecho a una educación apropiada.

**CUARTO SEÑALAMIENTO DE ERROR:** Erró el foro administrativo recurrido a privar a la parte querellante-recurrente de su debido proceso de ley al prohibir la presentación de una solicitud de reconsideración en este tipo de casos.

Luego de un trámite procesal, el 21 de julio de 2023, emitimos *Resolución* en la que autorizamos la presentación de la prueba oral debidamente estipulada. A esos efectos, el 1 de noviembre de 2023, las partes de manera conjunta presentaron la referida transcripción de prueba oral estipulada.

En consecuencia, el 8 de noviembre de 2023, emitimos *Resolución* concediendo términos a las partes para presentar sus Alegatos Suplementarios respectivamente.

En cumplimiento, el 27 de noviembre de 2023, la recurrente presentó su *Alegato Suplementario*.

Tras la concesión de una prórroga, el 21 de diciembre de 2023, la agencia recurrida presentó su *Alegato*.

Con el beneficio de la comparecencia escrita de ambas partes y la transcripción de la prueba oral, damos estos por perfeccionados y procedemos a resolver.

**II.**

**-A-**

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina." *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas." *Graciani Rodríguez v. Garaje Isla Verde, LLC*, 202 DPR 117, 126 (2019).

La normativa jurisprudencial ha reiterado que, en el derecho puertorriqueño, existe una presunción de legalidad y corrección a favor de los procedimientos y decisiones que emiten las agencias administrativas. *Rolón Martínez v. Supte. Policía*, supra. Ello responde "a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados." *Íd*.

Así, el estado de derecho vigente nos impone otorgar deferencia a las agencias administrativas, siempre que la parte que impugne el dictamen administrativo no produzca evidencia suficiente que rebata la presunción de legalidad y corrección. *Graciani Rodríguez v. Garaje Isla Verde*, LLC, supra, citando a *Otero v. Toyota*, 163 DPR 716, 728 (2005) (*per curiam*). Por tanto, al llevar a cabo nuestra función revisora, debemos enfocarnos en determinar: (1) si el

remedio fue el apropiado; (2) si las determinaciones de hechos están sostenidas por el principio de evidencia sustancial; y (3) si las conclusiones de derecho fueron correctas. *Torres Rivera v. Policía de PR*, supra, pág. 626-627; *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo si están sostenidas por evidencia sustancial que surja del expediente administrativo, considerado en su totalidad. Sección 4.5 de la Ley Núm. 38-2017, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), 3 LPRA sec. 9675. Véase, además: *Otero v. Toyota*, supra, págs. 727-728.

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. *Torres Rivera v. Policía de PR*, supra, pág. 628. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Véase, sección 4.5 de la LPAU, *supra*.

-B-

En nuestro ordenamiento jurídico la educación es un derecho fundamental, consagrado en el Art. II, sec. 5 de la Constitución del Estado Libre Asociado de Puerto Rico. Dicha sección dispone que:

> "Toda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales. Habrá un sistema de instrucción

pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, se hará obligatoria para la escuela primaria. …" Art. II, Sec. 5, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 297.

Por su parte, el Ar. II, Sec. 1, Const. ELA, Tomo 1, ed. 2008 de nuestra constitución establece que:

La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana.

Como corolario de lo anterior, se han aprobado múltiples estatutos tanto a nivel federal como estatal cuyo propósito es ofrecer y dar acceso a los niños a la educación de conformidad con el mandato constitucional.

Asimismo, en ánimo de garantizar la igualdad de oportunidad educativa a los niños y niñas con impedimentos, el Congreso de los Estados Unidos aprobó el *Individuals with Disabilities Education Act*, según enmendada, 20 USC sec. 1400 et seq., (en adelante, Ley IDEA).

En esencia, la Ley IDEA exige, *inter alia*, que los Estados y territorios que se benefician de fondos del Depto. de Educación federal establezcan programas de educación especial pública, gratuita, apropiada y que atiendan las necesidades especiales de cada estudiante. *Declet Ríos v. Dpto. de Educación*, 177 DPR 765, 776 (2009). A su vez, el estatuto aludido tiene como fin, entre otros, proteger los derechos de los niños y niñas con impedimentos, así como los de sus padres o guardianes. 20 USC sec. 1400(c); *Forest Grove School Dist. v. TA*, 557 US 230, 239 (2009).

En específico, la Ley IDEA define la *educación pública, gratuita y apropiada*, conocida como FADE por sus siglas en inglés, de la siguiente manera:

(9) Free appropriate public education

The term "free appropriate public education" means special education and related services that -

(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;

(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.
20 USCA sec. 1401(9).

Además, el Tribunal Supremo federal ha establecido que la FADE es aquella que ha sido diseñada especialmente para el menor, tomando en consideración su diagnóstico particular, proveyéndole así los servicios necesarios para que pueda sacarle el mayor provecho y beneficio a la educación ofrecida. Lo anterior deberá ser pagado por el fisco y estará bajo la supervisión y dirección pública. Además, deberá cumplir con las exigencias establecidas por la agencia educativa estatal, quien llevará a cabo el Programa de Educación Individualizada del menor. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 US 176, 188-189 (1982).

El Programa de Educación Individualizada (en adelante, PEI) consiste en una declaración escrita que hace la agencia gubernamental correspondiente luego de evaluar al menor discapacitado. Dicho plan es especialmente diseñado para satisfacer las necesidades individuales y particulares del niño con impedimento,

incluyendo la ubicación escolar, las instrucciones en el salón de clases, en el hogar, en los hospitales y en cualquier lugar en donde el niño se desenvuelva. 20 USC secs. 1401 y 1414. El PEI debe contener los detalles sobre las necesidades educativas del menor e incluir, entre otras cosas, una evaluación del desempeño educacional del menor; metas educacionales medibles; una lista de las necesidades especiales de educación y servicios suplementarios necesarios para satisfacer las necesidades del menor. 20 USC sec. 1414(d); *Schaffer ex rel. Schaffer v. Weast*, 546 US 49, 53 (2005). Mediante el PEI, se logra ofrecerle al menor la educación pública, gratuita y apropiada a la cual tiene derecho. Así pues, el PEI establecerá los servicios educativos y relacionados requeridos por el menor que se convertirán en su programa educativo por el periodo de un año. El PEI debe desarrollarse a través del Comité de Programa y Ubicación (en adelante, COMPU) compuesto por: (i) un oficial escolar calificado en educación especial, (ii) un maestro de educación regular, y (iii)los padres o el tutor del menor. 20 USC sec. 1414(d)(1)(B); *School Committee of Town Of Burlington, Mass v. Department of Education*, 471 US 359, 368(1985).

En cumplimiento con el mandato constitucional y con las exigencias federales bajo la Ley IDEA, en Puerto Rico se aprobó la Ley Núm. 51 del 7 de junio de 1996, según enmendada, conocida como la *"Ley de Servicios Educativos Integrales para Personas con Impedimentos"*, 18 LPRA sec. 1351, *et seq.* (en adelante, Ley Núm. 51). En esencia, la precitada ley le garantiza a las personas con impedimentos iguales derechos que las personas sin impedimento, a recibir una ubicación menos restrictiva,

una educación pública, gratuita, especial y apropiada de acuerdo a sus necesidades individuales; ser evaluado y diagnosticado con prontitud por un equipo multidisciplinario que tome en consideración sus áreas de funcionamiento y necesidades, de modo que pueda recibir los servicios educativos y relacionados indispensables para su educación de acuerdo al programa educativo individualizado para el desarrollo óptimo de sus potenciales; y que las decisiones que se tomen se fundamenten en el mejor interés de su persona, entre otros. 18 LPRA secs. 1352-53.

La Ley Núm. 51, *supra*, confiere el derecho a los padres de entre otras cosas, instar una querella para solicitar una reunión de mediación o vista administrativa, en caso de que la persona con impedimentos no esté recibiendo una educación apropiada, en el ambiente menos restrictivo y de acuerdo con los arreglos de servicios contenidos en el PEI. 18 LPRA sec. 1353.

-C-

En conformidad con lo anterior, el Depto. de Educación recibe asistencia económica del gobierno federal para lograr los objetivos de la Ley IDEA, por lo cual, está bajo la jurisdicción de los procedimientos que prescribe dicho estatuto federal. En su consecuencia y anticipando los posibles conflictos que podrían surgir entre los padres y las agencias educativas, la Ley IDEA permite que la parte insatisfecha presente una querella para que luego se dilucide el conflicto en una vista conforme al procedimiento administrativo estatal que cumpla con el debido proceso de ley. 20 USC sec. 1415. En dicha vista,

el juez administrativo deberá enfocar su análisis en evaluar si el menor recibió una educación pública, gratuita y apropiada. 20 USC sec. 1415(f)(3)(E)(i); 34 CFR 300.507 y 300.511.

La parte que resulte agraviada en dicha vista tendrá derecho a solicitar la revisión judicial de la misma. Entonces, el tribunal revisor estudiará el expediente administrativo, solicitará evidencia adicional de ser necesaria y luego de aquilatar toda la prueba ante sí, basándose en la preponderancia de la prueba, otorgará el remedio que estime apropiado. 20 USC sec. 1415(i)(2)(C); *School Committee of Town Of Burlington, Mass v. Department of Education*, *supra*, pág. 369. En lo pertinente, la Sec. 1415 de la Ley IDEA, dispone las siguientes salvaguardas procesales:

(i) Administrative procedures

(1) In general

(A) Decision made in hearing
A decision made in a hearing conducted pursuant to subsection (f) or (k) shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) and paragraph (2).

(B) Decision made at appeal

A decision made under subsection (g) shall be final, except that any party may bring an action under paragraph (2).

(2) Right to bring civil action

(A) In general

Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

Adviértase, que la Ley IDEA confiere carácter de finalidad a los dictámenes emitidos como parte de una vista administrativa celebrada a su amparo.

### III.

De entrada, debemos destacar que el estudiante G.M.P.I. es un estudiante del Programa de Educación Especial del Depto. de Educación y, este último, lo ubicó en una escuela privada debido a la falta de una ubicación apropiada en el sistema público de enseñanza para satisfacer sus necesidades especiales. Por ello, se desencadenan unos incidentes que culminan con la *Resolución* emitida el 11 de mayo de 2023 por la agencia recurrida e inconformes con tal dictamen, surge el caso de epígrafe que nos ocupa.

### -A-

En síntesis, la recurrente plantea cuatro (4) señalamientos de error. Particularmente, en su cuarto señalamiento de error, alega que el Depto. de Educación incidió al prohibirles presentar una moción de reconsideración y, de esa manera, les privó de su debido proceso de ley. No obstante, dicho error no se cometió.

Según discutimos, en el derecho aplicable, la Ley IDEA es clara cuando establece que la parte que resulte agraviada en la vista administrativa bajo sus disposiciones tendrá derecho a solicitar la revisión judicial de la misma en este Tribunal de Apelaciones. Al respecto, véase 20 USC 1415 (i)(1)(A).

Ante esto, determinamos que la agencia recurrida consignó las advertencias legales de manera correcta y conforme a derecho.

Por tanto, es forzoso concluir que no se violó el debido proceso de ley de la parte recurrente y esta curia se encuentra en posición de resolver.

**-B-**

A continuación, procedemos con la discusión del primer señalamiento de error. En síntesis, la recurrente argumenta que la agencia recurrida es responsable de reembolsar el pago por los alimentos que recibió el estudiante G.M.P.I. en la escuela privada donde está ubicado para obtener los servicios educativos adecuados a sus necesidades. Entendemos que tiene razón, veamos.

Aun cuando los servicios de alimentos no fueron recomendados en el PEI del estudiante G.M.P.I. ni discutidos en la reunión de COMPU, estos deben ser concedidos en virtud de los preceptos constitucionales y leyes federales que cobijan a las personas con impedimentos.

Conforme esbozamos, en el ápice II de esta *Sentencia*, la Constitución de Puerto Rico garantiza a todos los estudiantes del sistema de educación pública el derecho de obtener una educación gratuita y adecuada. De manera que, ha sido incorporado como política pública, el derecho a recibir desayuno y almuerzo durante el horario escolar. Por ello, reiteramos que el servicio de alimento gratuito en las escuelas públicas emana de un derecho constitucional.

Considerando lo anterior, entendemos que todos los estudiantes del sistema de educación pública de Puerto Rico, incluyendo a los estudiantes del programa de educación especial, son acreedores del derecho a recibir alimento durante el horario escolar y ninguno debe ser

excluido de tal derecho. Incluso, somos del criterio que este derecho se debe implementar con igual firmeza cuando son estudiantes ubicados en escuelas privadas para satisfacer sus necesidades especiales debido a que el sistema de educación publica no cuenta con los servicios adecuados para ellos.

Por tanto, determinamos que el estudiante G.M.P.I. le cobija su derecho constitucional al disfrute de una educación pública y gratuita en igualdad de condiciones que el resto de los estudiantes del servicio de educación pública. Lo anterior, coincide con lo resuelto por este foro apelativo en *Lisandra Colon Rosario v. Departamento de Educación*, Sentencia del 31 de octubre de 2013, KLAN201300779 (Grana Martínez, Jueza Ponente). Concluir lo contrario es hacer una determinación discriminatoria y contraria a derecho. En síntesis, se cometió el primer señalamiento de error.

–C–

Por estar relacionados, atendemos en conjunto el segundo y tercer señalamiento de error planteado por la recurrente. En síntesis, alega la señora Izquierdo que la agencia recurrida es responsable de reembolsar lo pagado por las terapias cognoscitivas que recibió el estudiante G.M.P.I. Añadió, además, que la agencia recurrida erró en su apreciación de la prueba sobre la necesidad de las referidas terapias. No obstante, entendemos que no tiene razón. Veamos.

Recordemos que, en el ejercicio de nuestra jurisdicción revisora, debemos deferencia a las determinaciones de hechos que formulan los foros administrativos, siempre que encuentran apoyo en el expediente administrativo, y satisfagan el estándar de

prueba aplicable. Igualmente, en materia de apreciación de la prueba, debemos deferencia a las determinaciones que realizan dichos organismos. Ello, pues gozan de una presunción de legalidad y corrección, que se basa en la experiencia y pericia que se presume dichos organismos poseen.

Surge del expediente del caso de autos, que el estudiante G.M.P.I. tiene recomendado en su PEI del año escolar 2022-2023 las siguientes terapias: (1) terapia educativa, (2) terapia psicológica y (3) terapia de habla y lenguaje. Igualmente consta, en el expediente y así lo afirmaron ambas partes, que el Depto. de Educación aprobó un reembolso relacionado a matricula, mensualidades y libros. Además, consta en la *Transcripción de Prueba Oral* y en el expediente, que al estudiante G.M.P.I. se le realizaron dos evaluaciones cognitivas: la primera en el año 2019 y la segunda en el año 2021. Sin embargo, no surge del expediente algún informe preparado por el especialista que alegadamente evaluó al estudiante G.M.P.I y determinó la necesidad de recibir terapias cognoscitivas. Tampoco se presentó durante la vista administrativa el testimonio de tal especialista. Más relevante aun, no se presentó una evaluación actualizada para el año escolar 2022-2023.

Por lo tanto, la agencia recurrida nunca estuvo en posición para determinar y evaluar con prueba fehaciente la necesidad el estudiante G.M.P.I. de recibir terapia cognoscitiva. Además, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, nos abstenemos de intervenir con la apreciación de la prueba hecha por la agencia recurrida.

En consideración a lo antes expuestos, el segundo y el tercer señalamiento de error, no fueron cometidos.

**IV.**

Por los fundamentos antes expuestos, se **MODIFICA** la *Resolución* recurrida en cuanto a la denegación del reembolso por el pago de alimentos y se ordena a la parte apelada a reembolsar los gastos de alimentos incurridos, y se **CONFIRMA** en cuanto a todo lo demás.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones